## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SS&C TECHNOLOGIES, INC.** | ) |
| | ) |
| **Plaintiff,** | )  **Civil Case No. _____** |
| | ) |
| **v.** | ) |
| | ) |
| **RICHARD PULLARA,** | )  **Jury Trial Demanded** |
| | ) |
| **Defendant.** | ) |

### COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF

Plaintiff SS&C Technologies, Inc. ("SS&C" or "Plaintiff"), by and through its attorneys, alleges the following as and for its Complaint against defendant Richard Pullara ("Pullara" or "Defendant"):

### NATURE OF THE ACTION

1.      SS&C brings this lawsuit against Pullara, a former Manager of Business Solutions for SS&C, for trade secret misappropriation and breach of contract. Such claims are premised on SS&C's recent discovery that Pullara retained, and has inevitably engaged in the improper use and disclosure of, SS&C's highly proprietary and confidential product and sales information following his departure from SS&C.

2.      Specifically, two days before resigning from SS&C to join SS&C's direct competitor, Clearwater Analytics, LLC ("Clearwater"), Pullara secretly, and without SS&C authorization, transferred numerous highly confidential, proprietary SS&C documents onto at least one personal external USB drive that he took with him with the apparent intent to use and benefit from such information and data while employed at SS&C's competitor, Clearwater. The information and data taken by Pullara are proprietary SS&C product and sales information and

include a virtual blueprint of the company's critical software products and services, customer and prospective customer lists and substantial competitive pricing information.

3.      Pullara's misappropriation, retention and disclosure of SS&C confidential information constitutes trade secret misappropriation in violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 *et seq.* ("CUTSA") and violates the non-disclosure agreement he entered with SS&C and SS&C's Code of Business Conduct and Compliance Guide ("Code of Conduct"), which Pullara expressly agreed to follow.  Upon information and belief, Pullara's wrongful conduct has damaged SS&C and will continue to expose SS&C to more damages if he is not precluded from using such information.  Such damage and risk arises from the fact that Pullara will inevitably utilize – and likely already has utilized – SS&C's confidential information in his role as the Manager of Insurance Solutions at Clearwater, one of SS&C's main competitors and his new employer.

4.      Accordingly, SS&C seeks: (1) injunctive relief permanently prohibiting Pullara from using SS&C's confidential information and trade secrets; (2) entry of an award of damages in favor of SS&C including actual damages and any profits Pullara has achieved as a result of his breaches of his agreements with SS&C; (3) pre-judgment interest for any damages awarded; (4) costs of suit incurred herein; (5) SS&C's attorneys' fees and costs reasonably expended in this action; and (6) such other and further relief as the Court deems just and appropriate under the circumstances.

## PARTIES

5.      SS&C is, and at all times relevant hereto was, a corporation organized under the laws of Delaware with its principal place of business in Windsor, Connecticut.

2

6.     Pullara was a resident of Connecticut throughout the period of his employment by SS&C. Sometime after accepting employment with Clearwater, Pullara relocated and became a resident of Idaho.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because SS&C is a citizen of Connecticut and Pullara is a citizen of Idaho, and the amount in controversy is greater than $75,000, exclusive of interests and costs.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district, namely the contracts at issue were executed in Connecticut, the original versions of SS&C proprietary information that Pullara removed from SS&C files are located in this judicial district, Pullara's removal and retention of such information took place in this judicial district, and the damage caused by Pullara's conduct was incurred in this judicial district.

## STATEMENT OF FACTS

### SS&C's Business And The Competitive Environment

9.     SS&C is a leading seller of software and software-enabled services to the global financial services industry, which primarily consists of the insurance, hedge fund, asset, and wealth management market segments.

10.     SS&C's software and software-enabled services help SS&C's clients manage their global investment portfolios, evaluate investment performance, comply with complex accounting, tax and regulatory reporting requirements and automate their underlying business and office operations. For example, these products and services ensure that companies comply with various Generally Accepted Accounting Principles, IRS and international tax reporting

3

requirements, National Association of Insurance Commissioners Statutory Accounting Principles and various other regulatory reporting requirements.

11.     SS&C has devoted three decades and substantial resources to the development of its software and software-enabled services, including the client reporting that is generated using its software. To accomplish this development effort, SS&C has relied upon a deep bench of functional experts including national and international accounting experts: CPAs, chartered accountants, CFAs, actuaries, mathematicians and computer scientists. This developed functionality is a significant asset that SS&C uses to cultivate new clients and maintain its existing client base.

12.     Over the last thirty years, SS&C has steadily increased its business through the provision of such products and services. Currently, SS&C provides software and software-enabled services to approximately 10,000 clients worldwide.

13.     In addition to its proprietary product information, SS&C maintains extensive and highly-detailed lists of its clients and prospective clients. These lists have been developed through the investment of significant time, effort, and expense of its employees. Acquiring and cultivating new client relationships is often a multi-year business development and negotiation process, requiring the substantial investment of SS&C capital and resources, including the time, efforts, and expertise of SS&C professionals. SS&C makes similar substantial investments to maintain its existing client relationships.

14.     SS&C has developed and acquired its proprietary product, customer and prospective customer information through a multi-decade effort on behalf of the company and its employees. SS&C goes to great lengths to protect such information.

4

15.    For example, SS&C maintains such information on its password-protected computer network and password protected hard drives on its employees laptop computers and enters strict confidentiality agreements with its employees who have access to such information.

16.    SS&C also places extensive confidentiality designations on its proprietary documents and in applicable instances specifically identifies such documents as containing SS&C trade secret information.

17.    SS&C also has stringent policies that require its employees to preserve the confidentiality of SS&C information. In particular, like its non-disclosure agreements, SS&C's Code of Conduct requires its employees to protect the confidentiality of such information and not to disclose it to others except as necessary to fulfill the responsibilities of their job. SS&C requires its employees to expressly acknowledge and agree to abide by its Code of Conduct.

18.    SS&C's Code of Conduct further provides that upon their departure from SS&C, employees are not to remove any proprietary SS&C information or SS&C computer hardware and software.

19.    The Code of Conduct also expressly prohibits employees from downloading unauthorized software (which would include cloud-based software). SS&C also has an Information Security Acceptable Use Policy ("Acceptable Use Policy") that prohibits the unauthorized download of external software.

20.    Finally, the Code of Conduct expressly states that violations of SS&C's policies may result in termination of employment and, in some situations, civil or criminal penalties.

### Pullara's Role At SS&C

21.    Pullara began working at SS&C in January 2000 as an Investment Accountant. On December 16, 2000, Pullara became a Senior Accountant. In that capacity, he assisted in the implementation and development of SS&C's CAMRA software product and related services and

5

developed and implemented proprietary reports for SS&C in connection with such work. SS&C's CAMRA software product, among other things, provides SS&C customers with a comprehensive insurance investment accounting and reporting system that incorporates multiple accounting methodologies and reporting levels, and fully auditable data and robust multi-currency processing. Pullara worked closely with SS&C clients in planning and executing the implementation of CAMRA within their particular technical environment.

22.     From November 2003 through August 2006, Pullara worked as a Manager of Investment Accounting. In this capacity, Pullara worked directly with SS&C clients on accounting matters and carefully assisted clients in their use of SS&C products, including the development and delivery of extensive training material.

23.     From August 2006 through March 2012, Pullara served as a Manager of Business Solutions for SS&C. In this capacity, he worked closely with SS&C's sales team in selling SS&C products and prepared, organized and answered client and prospective client questions regarding SS&C software. He participated in key sales presentations and meetings in connection with such efforts. He also had extensive access to SS&C software product information and customer and prospective customer lists to perform his job responsibilities. In the last year of Pullara's employment with SS&C he served primarily in a sales capacity, although his title did not change. By the end of his employment, Pullara had obtained and stored on his computer a virtual blueprint of the company's critical software products, including product architecture and detailed software and solution functionality, confidential client software release information, user manuals, software reporting output, and extensive client training material.

24.     As the result of his various roles at SS&C over the course of his twelve year employment, Pullara acquired an intimate working knowledge of SS&C's CAMRA product,

6

55762202 v1

SS&C's proprietary customer training materials, SS&C's sales efforts and product pricing, and SS&C's customers.

### Pullara Is Contractually Obligated To Protect And Not Improperly Use or Disclose SS&C's Confidential Information And Trade Secrets

25.     After joining SS&C, Pullara entered into multiple agreements with SS&C relating to SS&C's confidential information and trade secrets.

26.     Pullara entered the first such agreement on January 11, 2000 (the "2000 NDA"). This agreement specifically precluded Pullara from improperly retaining and otherwise disclosing SS&C proprietary information to third parties.

27.     On February 28, 2001, Pullara executed an acknowledgment expressly agreeing to comply with SS&C's Code of Conduct. As explained above, the Code of Conduct provided a comprehensive set of requirements with respect to the handling and use of confidential SS&C information.

28.     Subsequently, on April 26, 2002, Pullara and SS&C executed another Non-Disclosure Employment Agreement (the "2002 NDA"), attached hereto as Exhibit A. The 2002 NDA replaced the 2000 NDA. In the 2002 NDA, Pullara expressly agreed to the following:

> (a) "*The Employee/Agent [Pullara] will not disclose any Proprietary Information to any person* or entity other than employees of the Company or use the same for any purposes (other than in the performance of his/her duties as an Employee/Agent of the Company) . . . either during or after his/her employment with the Company." 2002 NDA, at 1(a) (emphasis added);

> (b) "The Employee/Agent agrees that all files, letters, memoranda, reports, records, data, sketches, drawings, laboratory notebooks, program listings, or other written, photographic, or other tangible material containing Proprietary Information . . . which shall come into his/her custody or possession, shall be and are the exclusive property of the Company . . ." 2002 NDA, at 1(b);

> (c) "*All such materials* or copies thereof and all tangible property of the Company in the custody or possession of the

7

> Employee/Agent *shall be delivered to the Company, upon . . .*
> *termination of his/her employment.* After such delivery, *the*
> *Employee/Agent shall not retain any such materials or copies*
> *thereof of any such tangible property*." 2002 NDA, at 1(b)
> (emphasis added).

## SS&C Learns That Pullara Misappropriated SS&C's Confidential Information

29.     Pullara left SS&C on March 1, 2012 to join Clearwater. At the time, SS&C was
not aware that Pullara had violated any of his obligations to maintain and preserve the
confidentiality of SS&C confidential information and not to remove such information from
SS&C's systems or that he had otherwise misappropriated any of SS&C's trade secrets. SS&C
only began to uncover the seeds of Pullara's misconduct in the late winter and spring of 2016 as
a result of its investigation into the actions of another former employee who had left SS&C to
join Clearwater.

30.     Specifically, in late 2015, SS&C learned that Bradley Rossa ("Rossa"), another
former SS&C employee, had misappropriated massive amounts of SS&C information upon his
departure from SS&C and taken such information with him to Clearwater when he started
employment with Clearwater. SS&C sued Rossa and Clearwater in Illinois (Rossa's residence at
the time he left SS&C), and that litigation is pending. On April 27, 2016, the Circuit Court of
Cook County, Illinois, Chancery Division, entered an Agreed Order Granting Preliminary
Injunctive Relief against Rossa and Clearwater. In the course of investigating Rossa's removal
of SS&C trade secrets for the benefit of Clearwater, SS&C learned through a detailed third party
forensic analysis of its systems that Pullara had also removed highly sensitive, competitive
information from SS&C's systems when he left SS&C in 2012. SS&C looked at Pullara's files
as part of its investigation into Rossa because he had worked closely with Rossa and SS&C
believed that Pullara was instrumental in recruiting Rossa to join Clearwater.

8

55762202 v1

31.     SS&C's 2016 forensic investigation has revealed that Pullara placed highly confidential SS&C information and data on a variety of USB external storage devices – nearly all of them *personal* USB devices.  In his last month of employment with SS&C, Pullara connected at least six and as many as sixteen separate external storage (such as USB) devices to his SS&C laptop.  The following table provides a list of each external device that Pullara connected to his SS&C laptop in his final month at SS&C:

| Friendly Name, Serial Number | Serial Number |
|---|---|
| 3556473558524B4C20202020 (serial number only) | |
| ST910082 4AS USB Device, FF9100824A0000000000005FF52603 | |
| Apple iPad, 0a9729634e0238f6b1905e6645ad1f8528b47f90 | |
| Verbatim USB Device, 11062103005373 | 7D3AE340 |
| Verbatim USB Device, 11062103005066 | 33D2CA21 |
| Kingston DataTraveler 2.0 USB Device, 5B6B05ADEF48 | C9088056 |
| USB DISK USB Device, 90B4160091A769BC | 58A69EEB |
| Verbatim USB Device, 11062119006287 | 3880FEOF |
| RIM BlackBerry SD USB Device, 7&1963141c&0&3C5B305C269AF8AFC8FBC1A87350F4D867307ED3 (instance ID) | |
| HTC Android Phone, HT0C9HL01441 | 39633265 |
| FLASH Drive SM_USB20 USB Device, AA04012700019768 | D82C22DE |
| 6&1fd118bd&0 (instance ID) | |
| Imation Nano Pro USB Device, 07C10403857C4907 | C18F184B |
| PNY USB 2.0 FD USB Device, AAB916CC00000045 | 4CEACD3B |
| Verbatim USB Device, 11062103005059 | E4ADCBC |
| HP v125w USB Device | BCD5312A |

32.     Critically, Pullara used the above-highlighted *personal* "PNY USB 2.0 FD USB" device with serial number 4CEACD3B (the "PNY USB Drive") to abscond with massive amounts of SS&C proprietary and confidential information on February 28, 2012, just two days before announcing his resignation from SS&C (at which time his access to SS&C data was

55762202 v1

summarily terminated). SS&C's recent audit of its own company-issued USB devices confirms that the PNY USB Drive was not company-issued and is not in the possession of SS&C.

33.     The forensic trail left on Pullara's SS&C laptop shows exactly how Pullara went about copying highly confidential data from his SS&C laptop to the PNY USB Drive. Specifically, on February 28, 2012, Pullara created *nine* separate .zip drives on the PNY USB Drive. Each of these .zip files had a file size of 0 MB when created, indicating – rather clearly – they were not pre-existing .zip files but were instead created on February 28, 2012 for the purpose of having data transferred *to* them. (If the .zip files were previously-existing files on Pullara's USB device, they almost certainly would have had a file size greater than zero.) The following table provides a timeline of the creation and naming of the .zip files on the PNY USB Drive created by Pullara on the morning of February 28, 2012:

| Time Created | .ZIP File Name |
|---|---|
| 8:20:06 AM | F:\blackberry pictures.zip |
| 8:20:51 AM | F:\client services.zip |
| 8:23:13 AM | F:\documents.zip |
| 8:26:27 AM | F:\marketing.zip |
| 8:27:13 AM | F:\Regulatory.zip |
| 8:29:28 AM | F:\training.zip |
| 10:00:49 AM | F:\non active.zip |
| 10:04:12 AM | F:\jenny.zip |
| 10:05:20 AM | F:\books.zip |

The forensic data on Pullara's laptop further reveals the names of the folders on SS&C's system that Pullara accessed immediately before and after creating these .zip files. For example, beginning at 9:57 AM on February 28, Pullara viewed sixty-one folders on his SS&C laptop, each on his hard drive with the following source location: "Documents\SALES\**NON ACTIVE**\[client name]." Three minutes later – at 10:00 AM – Pullara created a .zip file on the

10

PNY USB Drive titled: "**non active**.zip." On information and belief, Pullara transferred a substantial number of the files within the folders he viewed from SS&C's system to the PNY USB Drive and the information transferred onto the PNY USB Drive contained SS&C confidential and proprietary information and trade secrets, including product and customer-specific sales information.

34.     The forensic evidence on Pullara's laptop shows that merely two days before submitting his resignation, Pullara created nine .zip files on the PNY USB Drive. Most of the .zip files had identical folder names on his laptop. The below chart shows the precise timing of Pullara's pattern of activity that morning: Pullara's PNY USB Drive was inserted into his SS&C laptop, an empty .zip file was created on the PNY USB Drive, and at about the same time Pullara viewed the folders bearing the same name on his laptop. The following table provides a chronology of Pullara's initial insertion of the PNY USB Drive into his S&C laptop and his creation of the first .zip file on February 28, 2012:

| Time | Activity | Drive |
|---|---|---|
| 8:09:27 AM | A USB device  with a serial number 4CEACD3B was connected to Pullara's SS&C laptop. | F:\4CEACD3B |
| 8:20:51 AM | Pullara created a file on his personal USB device called "**F:\client services.zip**" | F:\4CEACD3B |
| 8:22:24 AM | Beginning at this time, Pullara viewed these folders on his SS&C laptop's hard drive:<br>• Desktop\User libraries\Documents\My Documents\DEVOLOPMENT<br>• Desktop\User libraries\Documents\My Documents\DIRECT | C:\ |

The "DEVOLOPMENT" and "DIRECT" folders on Pullara's SS&C laptop contain highly confidential documents and trade secrets concerning SS&C's clients.

55762202 v1

35.    Pullara's activities continued, when he created the following .zip drive on the

PNY USB Drive just one minute later:

| Time | Activity | Drive |
|------|----------|-------|
| 8:23:13 AM | Pullara created a file on his personal USB device called **"F:\documents.zip"** | F:\4CEACD3B |
| 8:23:26 AM | Beginning at this time, Pullara viewed these folders on his SS&C laptop's hard drive:<br><br>• Desktop\User Libraries\Documents\My Documents\Downloads<br><br>• Desktop\User Libraries\Documents\My Documents\Employee information\PERSONAL<br><br>• C:\Users\rpullara\Documents\Employee information\Application %20for%20SimCorp%20USA%201nc[1].docx<br><br>• C:\Users\rpullara\Documents\Employee information<br><br>• Desktop\User Libraries\Documents\My Documents\History<br><br>• Desktop\User Libraries\Documents\My Documents\Mail | C:\ |

Again, Pullara engaged in the same pattern of conduct:  he created an empty .zip file on his

personal USB device, and then accessed a number of SS&C folders corresponding to the same

name on his laptop.

36.    Pullara's raid of SS&C's confidential and trade secret information continued

unabated over the next several hours:

SS&C's regulatory files:

| Time | Activity | Drive |
|------|----------|-------|
| 8:26:42 AM | Beginning at this time, Pullara viewed this folder on his SS&C laptop's hard drive:<br><br>• Desktop\User Libraries\Documents\My Documents\Regulatory | C:\ |
| 8:27:13 AM | Pullara created a file on his personal USB device called **"F:\Regulatory.zip"** | F:\4CEACD3B |

SS&C's training files:

| Time | Activity | Drive |
|------|----------|-------|
| 8:29:17 AM | Beginning at this time, Pullara viewed this folder on his SS&C laptop's hard drive:<br><br>• Desktop\Shared Documents Folder (Users Files)\Documents\TRAINING DOCS\service review | C:\ |
| 8:29:28 AM | Pullara created a file on his personal USB device called **"F:\training.zip"** | F:\4CEACD3B |

SS&C's files relating to non-active sales information – categorized by client (the client names have been redacted given confidentiality concerns):

| Time | Activity | Drive |
|------|----------|-------|
| 9:51:21 AM | Beginning at this time – and until 9:58 AM – Pullara viewed these **61 folders** on his SS&C laptop's hard drive (SS&C has withheld the full client names for confidentiality reasons):<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name]<br><br>• Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | C:\ |

13

| Time | Activity | Drive |
|---|---|---|
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My | |

14

| Time | Activity | Drive |
|------|----------|-------|
| | Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |

15

| Time | Activity | Drive |
|------|----------|-------|
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • Desktop\User Libraries\Documents\My Documents\SALES\NON ACTIVE\[client name] | |
| | • C:\Users\rpullara\Documents\SALES\NON ACTIVE\[client name] | |
| 10:00:49 AM | Pullara created a file on his personal USB device called **"F:\non active.zip"** | F:\4CEACD3B |

SS&C's files relating to active sales/deal information:

| Time | Activity | Drive |
|------|----------|-------|
| 10:02:29 AM | Beginning at this time, Pullara viewed these folders on his SS&C laptop's hard drive: | C:\ |
| | • Desktop\User Libraries\Documents\My Documents\SALES\Profile Forms | |
| | • Desktop\My Computer\ C:\Users\rpullara\Documents\SALES\ACTIVE DEALS | |
| | • Desktop\Shared Documents Folder (Users Files)\Documents\SALES\RFP | |
| 10:04:12 AM | Pullara created a file on his personal USB device called **"F:\jenny.zip\ACTIVE DEALS"** | F:\4CEACD3B |

The thousands of documents located in these folders provide a blueprint to practically every aspect of SS&C's CAMRA software product, service offerings and sales strategy for its insurance industry clients, including product architecture and detailed software and solution functionality, confidential client software release information, user manuals, software reporting output, and extensive client training material.

37.     Furthermore, Pullara received an email at 10:36 AM on February 28, 2012 attaching document titled "Rex 6.0 Report Book – In house only.docx." Thirty minutes later – at 11:06 AM – Pullara saved a document with that same name ("Rex 6.0 Report Book – In house only.docx") on the PNY USB Drive. The "Rex 6.0 Report Book" is a comprehensive report comprised of 55 documents that details SS&C's complete insurance industry software reporting capabilities and was developed by SS&C at great expense over several years. The Rex 6.0 Report Book contains a prominent warning on the first page that it "contains confidential and proprietary trade secret material of SS&C Technologies, Inc. (SS&C) and is only made available under license of a Non-Disclosure Agreement."

38.     The PNY USB Drive also included a document by the name "Book3.xlsx." The same document on Pullara's laptop contained a list of SS&C customers and revenue associated with those customers. Like the "Rex 6.0 Report Book," Book3.xlsx contains some of SS&C's most confidential information and key trade secrets.

39.     In summary, on February 28, 2012 – just two days prior to resigning to join Clearwater – Pullara created a total of *nine* .zip files on the PNY USB Drive to house thousands of SS&C confidential documents relating to product information, sales information, client information, marketing information, customer lists, and pricing. Upon information and belief, Pullara took the PNY USB Drive with him when he left SS&C to join Clearwater.

## COUNT I:  VIOLATION OF THE
## CONNECTICUT UNIFORM TRADE SECRETS ACT

40.     SS&C repeats and re-alleges the allegations made above as if fully stated herein.

41.     The vast majority of SS&C's proprietary product and sales information, including
its product overview documents, report summaries, customer lists and prospective customer lists,
are trade secrets under the CUTSA.  Conn. Gen. Stat. § 35-51(d).

42.     SS&C has devoted a substantial amount of time, effort and expense to develop
such client information, proprietary product information, and other trade secrets.  This
information is not readily available from any one public source.

43.     SS&C's client information, proprietary product information, and other trade
secrets, are sufficiently secret to derive economic value, actual or potential, from not being
generally known to other persons who can obtain economic value from their disclosure or use.

44.     SS&C has used reasonable efforts to maintain the secrecy and confidentiality of
its trade secrets, including its client information and proprietary product information.  By virtue
of the Non-Disclosure Agreement that Pullara signed with SS&C, the Code of Conduct that
Pullara agreed to and acknowledged and his relationship with SS&C, Pullara owed SS&C a duty
to maintain the secrecy of SS&C trade secrets to which he had access.

45.     Pullara has misappropriated SS&C's trade secrets by acquiring SS&C's trade
secrets through improper means including theft and/or breaching his duty to maintain the secrecy
of such trade secrets.

46.     It is inevitable that Pullara will disclose and has likely already disclosed SS&C's
trade secrets given his knowledge of those trade secrets and his position as a Manager of
Insurance Solutions at Clearwater, which is in direct competition with SS&C.

18

47.     Upon information and belief, Pullara intended to cause SS&C actual or

constructive harm through his acquisition of SS&C's trade secrets through improper means.

Such actions constitute willful and malicious conduct under the CUTSA. Conn. Gen. Stat. § 35-

53(b).

48.     Pullara's misappropriation of SS&C's trade secrets has caused, and will continue

to cause, damages to SS&C's its business, client relationships, goodwill and reputation well in

excess of $75,000.

49.     In addition, SS&C has expended, and will continue to expend, attorneys' fees and

costs to remedy Pullara's misappropriation, which are recoverable under the CUTSA. Conn.

Gen. Stat. § 35-53(b).

## COUNT II: BREACH OF CONTRACT

### (Violation of the Non-Disclosure Agreement and the Code of Conduct)

50.     SS&C repeats and re-alleges the allegations made above as if fully stated herein.

51.     The 2002 NDA and the Code of Conduct as agreed to and acknowledged by

Pullara are valid and enforceable.

52.     Pullara has breached the 2002 NDA by failing to return and/or retaining copies of

SS&C confidential information after termination of his employment, and by misappropriating

SS&C's confidential information. Similarly, Pullara breached the Code of Conduct by

misappropriating SS&C's confidential information.

53.     The 2002 NDA and the Code of Conduct are valid and enforceable agreements

not to use or disclose any SS&C confidential information to which Pullara had access during his

employment with SS&C except as authorized. The 2002 NDA contains a separate agreement not

to retain such confidential information after the termination of his employment.

54.     SS&C's proprietary client and product information is confidential information protected under the 2002 NDA and the Code of Conduct.

55.     Pullara has misappropriated SS&C's confidential information in violation of the 2002 NDA and the Code of Conduct.

56.     Pullara will continue to breach the 2002 NDA and the Code of Conduct further by continuing to retain, and/or using or disclosing such confidential information to Clearwater.

57.     As a result of the breaches and inevitable future breaches by Pullara of the 2002 NDA and the Code of Conduct, SS&C will suffer – and has suffered – damages to its business, client relationships, goodwill and reputation well in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, SS&C prays for the following relief:

A.    Entry of a permanent injunction prohibiting Pullara from using SS&C's confidential information and trade secrets;

B.    Entry of an award of damages to SS&C including actual damages and any profits Pullara has achieved as a result of his misappropriation;

C.    Punitive damages as a result of Pullara's willful and malicious conduct;

D.    Pre-judgment interest for any damages awarded;

E.    The costs of suit incurred herein;

F.    SS&C's attorneys' fees reasonably expended in this action; and

G.    Such other and further relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

Dated:  May 17, 2016                              Respectfully submitted,

John F. Droney (ct10906)
David A. DeBassio (ct24365)
HINCKLEY ALLEN
20 Church Street
Hartford, Connecticut 06103
Telephone: (860) 725-6200
Facsimile: (860) 278-3802

Samuel B. Isaacson (*pro hac vice* to be filed)
Matthew W. Walch (*pro hac vice* to be filed)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Attorneys for Plaintiff SS&C Technologies, Inc.*

21